UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PAUL DUVAL,<br><br>                        Plaintiff,<br><br>vs.<br><br>CALLAWAY GOLF BALL OPERATIONS, INC.,<br><br>                        Defendant. | CIVIL ACTION NO. 05-30181-KPN<br><br>**DEFENDANT'S OBJECTIONS TO PLAINTIFFS' MOTION IN LIMINE TO EXCLUDE DEFENDANT'S STATISTICAL EVIDENCE** |

Plaintiff has filed a Motion in Limine to Exclude Defendant's Statistical Evidence. The motion should be denied.

The evidence here, casually referred to as "statistical data"[1] by Plaintiff, is in reality merely data, prepared by the company before this litigation was commenced, indicating the demographic profile of its office staff before and after particular layoffs. As to the April 2004 layoff, the data includes two documents. The first lists all personnel (both Chicopee and Field Sales) laid off at the end of April, including each employee's title, date of birth, age, seniority date, years of service and other data gleaned from the personnel database. At the bottom the document reflects the total head count of those laid off, the average age of those laid off, the high age of those laid off, the median age

---

[1] Statistical data in employment cases takes infinite varieties. The relevance of such data, and whether it is only admissible through an expert witness, depends on the facts, claims and arguments in a particular case. Thus, many of the cases cited by Plaintiff reflect disparate impact cases. The statistics in such cases are used to prove an essential element of the claim. Accordingly, an expert is often needed to prove both that there was a statistically significant deviation within a particular group, and affirmatively discount other non-discriminatory explanations for such a deviation. It is not surprising that *bona fide*, carefully refined expert analysis is required in such cases.

1

of those laid off and the low age of those laid off.  (Similar data was provided for seniority.)  A second document reflects a snapshot of the Defendant's employee profile both before and after the April 2004 layoffs.  That document shows the average age and average length of service of the incumbent employee in the pool of all Office employees, subdivided by exempt and non-exempt employees and further subdivided by location (*i.e.,* Chicopee[2], Field Sales Offices, Ft. Worth, and Gloversville).[3]

Such data, which plaintiff seeks to exclude, is highly relevant under the circumstances of this case, in light of the Plaintiffs primary assertion, *i.e.,* that there was a company-wide directive, emanating from the president of the company, to "get younger"  Evidence, including raw data gleaned from the company's businesses records, that tends to show that the company did not in fact "get younger", while obviously not dispositive of whether there was discrimination in a particular case, is unquestionably relevant.  Moreover, the data here can be understood and weighed by a jury without need for expert analysis or explanation.

When addressing the motion in limine it is necessary for the court not to rely upon isolated phrases taken out of context from cases where different types of statistics were offered for entirely different reasons.  Rather, the court must focus on the specific evidence that Defendant would (and would not) present, in order to determine relevance of such evidence in the context of the Plaintiff's claims.  Only in that context could the court determine if the Plaintiff has demonstrated that the evidence Defendant seeks to

---

[2]All Plaintiffs were "Chicopee" "exempt" employees.

[3]These documents, and similar ones reflecting the 2005 layoffs, were produced during discovery.  Plaintiff took the deposition of the preparer of the document reflecting the before and after profiles from the preparer of the document, Mary Gay.

admit is either irrelevant to any issue presented by the facts of the case or that the jury would likely be confused by the evidence in the absence of expert testimony.

In the instant case, the evidence in question is simply raw data, and simple mathematic equations, compiled by the company in June of 2004 (and subsequently for other layoffs) to see if the layoffs as effectuated actually had reduced the average age of its office workforce. Thus, the evidence merely shows, for example, that on April 30, 2004, the *average*[4] age of the office workforce (and at its various locations) within the office) was X and on May 1, 2004, it was Y. The admission of such evidence need not be accompanied, as is often the case, by a claim that to a statistical significant probability the data demonstrates the presence, or even absence, of discrimination.

Even without such expert testimony, in the context of this case, the patent relevancy of the data is clear. In this regard, Defendant does not deny Plaintiff's general assertion that statistics are generally less useful (albeit obviously not irrelevant) in disparate treatment cases. McMillan v. Massachusetts Soc. for Prevention of Cruelty To Animals, 140 F.3d 288, 303 (1st Cir. 1998) ("We agree that in a disparate treatment case, such as this one, the necessary focus on the treatment of a particular individual appears incongruous with an analysis that necessarily involves numerous individuals and that, therefore, is intuitively more probative in the disparate impact context. [cites omitted] Nonetheless, such analyses are admissible even in disparate treatment cases unless they are "so incomplete as to be inadmissible as irrelevant."). See also, Flebotte v. Dow Jones & Co., Inc., 2000 WL 35539238, *6 (D. Mass. Dec. 6, 2000) (*citing*, McMillan v. MSPCA, 140 F.3d 288, 303 (1st Cir. 1998)) ("[t]he First Circuit has

---

[4]Surely, if otherwise relevant, a jury is capable of understanding the concept of "average". Moreover, counsel is free to examine on that point.

consistently held that statistics are relevant in disparate treatment cases even though they carry less probative value than in a disparate impact case.").

Indeed, neither raw data nor actual statistical evidence and expert testimony can meaningfully prove or disprove that discrimination occurred *vis a vis* a particular individual, and Defendant clearly does not argue otherwise.  Moreover, if this was simply a case where an individual was claiming that a particular decision maker made a discriminatory decision, overall data of the kind here would be of minimal relevance. *However, by claiming that Plaintiff lost his position by virtue of a company wide directive to get younger (based largely on ambiguous comments made by Robert Penicka several months after the April 2004 layoffs) Plaintiff has made relevant any evidence that would reasonably tend to disprove such an invidious assertion.*[5]

Thus, if Penicka's ambiguous comments are allowed into evidence in an effort to induce the jury to believe there was a desire by the company to effectuate the layoff in a manner that weeded out older employees, facts that tend to show that such disproportionate weeding out of older employees simply in fact did not occur could clearly lead the jury to one of two possible conclusions:  (1) no such directive was ever issued, either directly or impliedly, to the decision makers actually implementing the layoffs; or (2) such directive was given by the president but ignored by those actually selecting the individuals to be laid off.  Either conclusion would rationally lead to a verdict for defendant notwithstanding the comments.

---

[5]*Cf.* Rathbun v. Autozone, Inc., 361 F.3d 62, 79-80 (1st Cir. 2004) (statistical evidence is permissible in the disparate treatment context to show that the employer's conduct conformed to a general pattern of discrimination.")  It goes without saying that evidence showing the absence of a claimed general pattern is also relevant.

Indeed, in the instant case, despite the absence or claim that there was a pattern and practice of age discrimination, Plaintiff has survived summary judgment, in substantial part, based on comments made by Robert Penicka at a Chamber of Commerce meeting in June 2004.  Thus, beyond using the evidence of Penicka's comments to "color" the claim, which might be appropriate, it is clear that the comments to the Chamber lie at the center of Plaintiff's case. Indeed, at summary judgment, despite any evidence that the layoffs actually disproportionately impacted older workers,this court found that such comments were sufficient to carry Plaintiff's burden of establishing as part of his *prima facie* case, that the layoffs were carried out "age neutrally."[6]   Duval v. Callaway Golf Ball Operations, Inc., 501 F. Supp. 2d 254, 265 (D. Mass., 2007)[7]  Implicit in the denial of summary judgment, the court also found that

---

[6]Penicka's comments are admissible to "add color" to the Plaintiff's case. However, respectfully, as the undersigned has unsuccessfully argued to this court, even if a discriminatory intent could be attributed to the comments, and even if such intent could be found to have "filtered down", that is not the equivalent of evidence showing that the layoffs were not conducted in an age neutral fashion.  If the evidence shows that the layoffs did not disproportionately affect older workers, such comments may show an evil heart, it does not show that actions were taken by others for unlawful reasons.  As a subsequent First Circuit court's subsequent decision makes clear, comments by individuals other than the decision maker are not evidence of discrimination by the decision maker whose decision is under attack. Bennett v. Saint-Gobain Corp., 507 F.3d 23, 29 (1st Cir. 2007) ("Thus, whether or not he made discriminatory comments would not have affected the outcome (which turned on whether Mesher--the person responsible for the decision to terminate the plaintiff's employment --acted out of a discriminatory animus).  Put another way, since Feagans had no part in the adverse employment decision, his comments, even if made, would constitute nothing more than stray remarks.  As such, they would be insufficient to block summary judgment."). The comments at the Chamber is not a substitute for evidence that Kelleher, Fry and Bosworth did not carry out the layoffs in an age neutral fashion.

[7]Id. "This evidence consists mainly of age-related comments made by Penicka and other decision makers….  In the court's view, however, a reasonable jury could discount these explanations and determine that Penicka's comments were indicative of company-driven age discrimination…the court finds little difficulty in conceiving that the president's possible "intent" or "motive" to discriminate filtered down to lower level decision makers, including the younger decision maker who targeted Plaintiff for layoff.

such evidence could support a conclusion that the explanations proffered by the decision makers were pretextual. Thus, in large measure, Plaintiff's case rides upon an assertion, based virtually exclusively on these comments, that there was a company-wide goal of weeding out older employees. That position makes relevant any and all facts that would tend to disprove such claim, including, of course, evidence that after 48 Office employees (including seven Field Sales employees) were laid off in April 2004, the company had not "gotten younger."

Of course, the weight to be given to this simple fact is up to the jury to decide. However, that is not a question of admissibility. Thus, <u>Walther v. Lone Star Gas Co.</u>, 952 F.2d 119, 125-26 (5th Cir. 1992) cited by Plaintiff's memo, the court did not preclude the statistical evidence in an age case. Rather, the court found that the statistical proof offered by both plaintiff and defendant was admissible, its weight to be decided by the jury..

Similarly, although Plaintiff ironically[8] cites <u>Simpson v. Midland-Ross Corp.</u>, 823 F.2d 937, *941 (6th Cir. 1987) to the effect that a before and after snapshot of the workgroup was "fundamentally irrelevant", that case did *not* indicate that such evidence was either inadmissible or irrelevant to disprove a claim of company-wide age bias. Rather, the issue before the court was whether the evidence, admitted in evidence, supported a jury verdict in favor of plaintiff's age claim. The court assessed evidence of average ages, and merely found that it did not establish pretext. Thus, the court stated:

---

[8]Not only was the evidence allowed into evidence, in the cited case, the court essentially overturned a plaintiff verdict, noting that Plaintiff's claim was substantially weakened by the fact that he was not replaced until several months after discharge, and the discharge occurred in the context of a reduction in force due to economic necessity. <u>Simpson v. Midland-Ross Corp.</u>, 823 F.2d 937, 941 (6th Cir. 1987). Those factors, of course, in whole or in part, are also present in the instant cases.

> In support of his claim, Simpson offered statistics regarding the average age of employees in his division as well as the average age of employees retained and fired during the period immediately preceding and following his termination.  The average age of workers in Simpson's section (national account managers) was 47.28, in small original equipment managers, 40.25, and in aftermarket sales, 36.2.  Simpson offered testimony showing that of those employees who left Midland-Ross, 76.5% were above age 40 and 23.5% were under age 40.  Finally, in the two years following Simpson's discharge, 5.8% of those hired were older than 40.  Simpson also alleged two other employees were discriminated against because of age, one of whom had chosen early retirement under an incentive plan and one who was demoted.
>
> Therefore, we must examine Simpson's statistical evidence to see if it was sufficient to rebut Midland-Ross' stated reasons for discharging him.  As in <u>Wilkins v. Eaton Corp.</u>, 790 F.2d 515, 523 (6th Cir. 1986), we conclude that Simpson's statistical evidence, even if arguably supporting an inference of discrimination to establish a *prima facie* case, has insufficient probative value to support a jury verdict on the ultimate question of discrimination.

Again, in the instant case, the average ages are not offered to disprove the possibility of discrimination in a particular case.  It is being offered, and clearly is relevant, to disprove the existence of a company-wide mandate to effectuate layoffs based on age.

    Moreover, Plaintiff was, of course, free to use the data provided during discovery to retain an expert in an attempt to rebuff the patent and obvious significance of the fact that the layoffs minimally increased, rather than decreased, the average age of Defendant's Chicopee office staff.  Thus, Defendant had informed the court and Plaintiff that, as it did at summary judgment, at trial it planned to introduce data that reflects the fact that the average age of the office staff did not in fact get younger.  And while Plaintiff's motion indicates that he "expects" such evidence to be introduced, beyond using the data at summary judgment, the Defendant clearly informed Plaintiff that it would seek to introduce such testimony.  Thus, at a case management conference addressing the possibility of expert witnesses, Plaintiff indicated that he intended to hire

7

an economics expert and perhaps a statistical expert if Defendant intended to offer the data he now seeks to exclude. Defense counsel clearly informed both the court and counsel that it was his intent to do so.

Plaintiff had ample opportunity to retain an expert to seek to rebuff the relevance of the data in question. Moreover, having elected not to designate a statistical expert, Plaintiff is still able to cross examine witnesses about the evidence[9] and would be free to argue, as is defense counsel, the *weight* to be given to the data. Clearly, while the evidence is prejudicial to Plaintiff, since it obviously belies the picture of a corporate ageist mentality that Plaintiff so clearly seeks to weave from isolated comments in an effort to bolster his case, the admission of the evidence clearly would not be unfairly prejudicial.

Nor is the employee profile showing the average age of the office workforce (and several subdivisions within it) on the day before and the day after the layoff require "expert" testimony to be admissible. The Defendant's proffered evidence consists of raw data that was calculated using simple, rudimentary mathematics that are well-within the capacity of a lay juror's understanding. See Simpson v. Midland-Ross Corp., 823 F.2d 937, 944 (6th Cir. 1987) ("Statistics gain relevance in one of two ways: the statistics, *standing alone, reasonably lead to a particular conclusion validated by human experience*, or comparative statistics point out discrepancies in behavior that would cause the average person to scrutinize the employer's motives.") (emphasis added). Neither is the Defendant's proffered statistical evidence "so incomplete" as to be deemed inadmissible. McMillan, 140 F.3d at 303.

---

[9]Indeed, Plaintiff took a deposition of the preparer of the data analysis for the April 2004 layoff during discovery.

Clearly the rudimentary mathematical calculations here do not parallel the complex statistical analysis that would, of necessity, have to be performed by a qualified statistician if this were a disparate impact case. However, it isn't. This is a disparate treatment case, and the evidence is proffered merely to rebut a claimed company-wide bias tainting the layoffs. (It also is relevant evidence on the question of whether liquidated damages are justified.) "This being the case, the sophisticated statistical comparisons between the impact on a victim class and that on non-victim class eligibles in the relevant labor pool, as required by Wards Cove, are unnecessary." Cuello-Suarez v. Puerto Rico Elec. Power Authority (PREPA), 988 F.2d 275, 278 (1st Cir. 1993)[10].

It would be wholly inappropriate to allow a claim of a company pattern of discrimination based on ambiguous statements months later, while precluding simple, and easily comprehensible, employment data that would demonstrate the absence of such a pattern. Plaintiff's motion should be denied.

Respectfully submitted,

  /s/ Jay M. Presser, Esq.
Jay M. Presser, Esq.
BBO No. 405760
Counsel for Defendants
Skoler, Abbott & Presser, P.C.
One Monarch Place, Suite 2000
Springfield, Massachusetts 01144
Dated:   February 25, 2008           Tel.: (413) 737-4753/Fax: (413) 787-1941

---

[10] Courts have often allowed an employer to offer similar data from a lay witness in employment discrimination claims. *See, e.g.*, Adamson v. Wyeth Pharmaceuticals, 2005 WL 2323188, *18 (D. Mass. 2005) (statistics maintained by employer allowed in race discrimination claim without expert); Lewis v. Area II Homecare for Senior Citizens, Inc., 397 Mass. 761, 769 (1986) (statistics regarding company's racial demographics allowed through lay witness).

CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing *Defendants' Objections to Plaintiffs' Motion in Limine to Exclude Defendant's Statistical Evidence* was served upon the attorney of record for each other party via electronic filing, on February 25, 2008.

      /s/ Jay M. Presser, Esq.
      Jay M. Presser, Esq.